[No. B119221. Second Dist., Div. Two. Oct. 27, 1998.]

CLEAVE GOODSON, Individually and as Administrator, etc., Plaintiff and Appellant, v.
PERFECT FIT ENTERPRISES, INC., et al., Defendants and Respondents.

ELZADA GOODSON et al., Plaintiffs, v.
PERFECT FIT ENTERPRISES, INC., et al., Defendants.

**COUNSEL**

Kiesel & Larson, Kristine L. Olsen and Paul R. Kiesel for Plaintiff and Appellant.

Remcho, Johansen & Purcell, Robin B. Johansen, Joseph Remcho, Kathleen J. Purcell, James C. Harrison and Gina M. Calabrese as Amici Curiae on behalf of Plaintiff and Appellant.

Horvitz & Levy, Christina J. Imre, Jon B. Eisenberg, Sandra J. Smith, Murchison & Cumming and Steven L. Smilay for Defendants and Respondents.

## OPINION

**FUKUTO, J.**—This appeal concerns the application of Civil Code section 3333.4 (section 3333.4), which precludes recovery of nonpecuniary damages on account of motor vehicle accidents with respect to which the injured person was an uninsured or intoxicated driver, or the owner of an uninsured vehicle involved in the accident.[1] The trial court ruled that this limitation applied to a wrongful death case brought by a widower whose spouse had been killed in an accident involving their vehicle, for which they did not carry insurance, but which was being driven by their daughter-in-law, who was insured. Applying the relevant provisions of California's Financial Responsibility Laws (Veh. Code, § 16000 et seq.) which define uninsured vehicles for purposes of section 3333.4, we conclude that on these facts plaintiff is not subject to the restrictions of that statute. We therefore reverse the judgment, insofar as it was rendered without allowing evidence of plaintiff's claimed nonpecuniary damages.

### FACTS

The parties' submissions reflect the following undisputed facts. Plaintiff Cleave Goodson, presently age 76, was married to the late Ocie Goodson for

---

[1] There are two sections of the Civil Code numbered 3333.4; the one at issue herein was enacted by initiative, Proposition 213 at the November 5, 1976, General Election. It provides as follows: "(a) Except as provided in subdivision (c), in any action to recover damages arising out of the operation or use of a motor vehicle, a person shall not recover non-economic losses to compensate for pain, suffering, inconvenience, physical impairment, disfigurement, and other nonpecuniary damages if any of the following applies: [¶] (1) The injured person was at the time of the accident operating the vehicle in violation of Section 23152 or 23153 of the Vehicle Code, and was convicted of that offense. [¶] (2) The injured person was the owner of a vehicle involved in the accident and the vehicle was not insured as required by the financial responsibility laws of this state. [¶] (3) The injured person was the operator of a vehicle involved in the accident and the operator can not establish his or her financial responsibility as required by the financial responsibility laws of this state. [¶] (b) Except as provided in subdivision (c), an insurer shall not be liable, directly or indirectly, under a policy of liability or uninsured motorist insurance to indemnify for non-economic losses of a person injured as described in subdivision (a). [¶] (c) In the event a person described in paragraph (2) of subdivision (a) was injured by a motorist who at the time of the accident was operating his or her vehicle in violation of Section 23152 or 23153 of the Vehicle Code, and was convicted of that offense, the injured person shall not be barred from recovering non-economic losses to compensate for pain, suffering, inconvenience, physical impairment, disfigurement, and other nonpecuniary damages."

over 50 years. The couple owned a 1991 Plymouth Voyager van, for which they did not carry liability insurance. On April 14, 1996—six and one-half months before the enactment of section 3333.4—Mrs. Goodson was a passenger in the van, which was being driven by her daughter-in-law, Elzada Goodson. Elzada Goodson was an insured under a qualifying automobile liability insurance policy, which covered her while driving the van. In the vicinity of 113th Street and Vermont Avenue, the van was broadsided by a pickup truck belonging to respondent, Perfect Fit Enterprises, Inc., and driven by its employee Victor Flores. Mrs. Goodson was killed.

As administrator of his wife's estate, plaintiff sued respondent and Flores for medical expenses she had incurred at the accident scene and hospital before death. In a cause of action for wrongful death, plaintiff sought to recover funeral and burial expenses, and "[p]ecuniary loss resulting from the loss of society, comfort, attention, services, and support" of his wife.

At the commencement of trial, respondent moved to preclude introduction of evidence relating the damages last mentioned, on grounds plaintiff was barred from recovering them by section 3333.4, because he had been an owner of a vehicle involved in the accident, which had not been insured. Opposing the motion, plaintiff argued, inter alia, that section 3333.4 did not apply because the vehicle had been insured, within the meaning of that statute, for the reason that the driver, Elzada Goodson, had been duly insured while driving it at the time of the accident.

The trial court granted the motion *in limine*. The parties thereupon agreed to entry of a judgment for $18,146.67, consisting only of plaintiff's economic damages.[2] Plaintiff then appealed from that judgment, insofar as it excluded, by virtue of the court's ruling under section 3333.4, damages for his loss of the society, comfort, support, etc., of Mrs. Goodson.

## DISCUSSION

Plaintiff and the amici curiae supporting him first contend that a proper reading of the text and legislative history of section 3333.4 establishes that its bar against recovery of nonpecuniary damages does not apply to wrongful death actions, or, more particularly, to the types of damages that were excluded from this case below. This appellate division has already determined these questions adversely to plaintiff's position, in *Hondo Co.* v. *Superior Court* (1998) 67 Cal.App.4th 176 [78 Cal.Rptr.2d 855].* Moreover, in the present case, both plaintiff and his late wife were owners of the allegedly uninsured van. ▮ The dispositive issue, therefore, is whether

---

[2] The judgment also ran against Flores, by his default.
*Reporter's Note: Review granted January 13, 1999 (S074768).

that vehicle "was not insured as required by the financial responsibility laws of this state." (§ 3333.4, subd. (a)(2).)

. The referenced Financial Responsibility Laws appear in division 7, section 16000 et seq., of the Vehicle Code. Those laws do not in so many words require that a motor vehicle be "insured." Rather, they impose a requirement of financial responsibility for injuries caused by motor vehicle operation. That requirement is found in Vehicle Code section 16020, and defined by Vehicle Code section 16021. Moreover, the Financial Responsibility Laws also define an "uninsured motor vehicle" as "a motor vehicle for which financial responsibility as provided in Section 16021 was not in effect at the time of the accident." (Veh. Code, § 16000.7.) We therefore look to the provisions of Vehicle Code section 16021 to determine if a vehicle is "not insured as required by the financial responsibility laws of this state." (§ 3333.4, subd. (a)(2).)

In this case, plaintiff and his wife, the owners of the vehicle, did not have liability insurance of their own for its use, but the driver, Elzada Goodson, did: She was an insured under an automobile liability policy covering her driving of her in-laws' van. In light of these facts, we agree with plaintiff that his vehicle was insured within the meaning of section 3333.4, by reason of Vehicle Code section 16021 and companion section 16020.

Vehicle Code section 16020, subdivision (a) provides that "Every driver and every owner of a motor vehicle shall at all times be able to establish financial responsibility pursuant to Section 16021, and shall at all times carry in the vehicle evidence of the form of financial responsibility in effect for the vehicle." Section 16021—again, the statute referenced in the definition of "uninsured motor vehicle" (§ 16000.7)—then provides, "Financial responsibility *of the driver or owner* is established *if the driver or owner of the vehicle involved in an accident* described in Section 16000 is: [¶] . . . [¶] (b) An insured or obligee under a form of insurance or bond which complies with the requirements of this division and *which covers the driver for the vehicle involved in the accident.*" (Veh. Code, § 16021, italics added.)[3] The plain meaning of these provisions, taken in conjunction with Vehicle Code section 16000.7, is that financial responsibility for the vehicle is established, and the vehicle is insured as required by the Financial Responsibility Laws, if the owner or the driver has insurance that covers the driver for his or her operation of the vehicle involved in an accident. Although the vehicle owner generally will satisfy these requirements by personally maintaining insurance for the vehicle, section 16021 provides that financial responsibility is

[3]The remaining subdivisions of section 16021 refer to other means for establishing financial responsibility. Vehicle Code section 16000 defines reportable accidents (essentially those involving bodily injury or more than $500 of property damage).

established so long as the driver is covered, under either the owner's automobile policy or the driver's own.

This understanding of the requirements for establishing financial responsibility is confirmed by Vehicle Code section 16054, regarding the proof of financial responsibility required to be furnished to the Department of Motor Vehicles in connection with reporting an accident. Section 16054 provides that proof of financial responsibility may be made by providing evidence either "[t]hat the owner had an automobile liability policy, a motor vehicle liability policy, or bond in effect at the time of the accident with respect to the driver or the motor vehicle involved in the accident" (§ 16054, subd. (a)(1)), or "[t]hat the driver of the motor vehicle involved in the accident, if he or she was not the owner of the motor vehicle, had in effect at the time of the accident an automobile liability policy or bond with respect to his or her operation of the motor vehicle not owned by him or her." (§ 16054, subd. (a)(2).) A "motor vehicle liability policy" is defined as meaning "an owner's policy or an operator's policy, or both," as further defined. (Veh. Code, § 16450; see §§ 16451-16452.) Section 16054 thus parallels Vehicle Code section 16021, subdivision (b), and effectively contemplates the situation in this case. It provides that when the driver involved in an accident is not the owner of the vehicle, financial responsibility may be proven if the driver was insured for operation of the vehicle, by the owner's policy or by the driver's own policy.

The requirements for financial responsibility as thus delineated may be contrasted with those that were contained in the predecessor versions of Vehicle Code sections 16020 and 16021. As enacted in 1974, section 16020 required every driver and owner to "maintain in force" one of the forms of financial responsibility set forth in section 16021 (such as insurance). (Stats. 1974, ch. 1409, § 8, p. 3097.) Likewise, section 16021 originally provided that financial responsibility was established if an owner or operator, "with respect to all motor vehicles owned or operated by him," was, among other options, an insured. (Stats. 1974, ch. 1409, § 8, p. 3097.) As amended, as of the time of the accident in this case and presently, the statutes provide, in section 16020, for "establish[ment of] financial responsibility pursuant to Section 16021," which in turn occurs "if the driver or owner of the vehicle involved in an accident" is an insured under a policy "which covers the driver for the vehicle involved in the accident." The financial responsibility requirement thus now focuses on coverage of the driver.

Respondent's arguments in opposition to the conclusion that plaintiff's vehicle was insured as required by section 3333.4 are not persuasive. Respondent does not take issue with the meaning of Vehicle Code section

16021, as it plainly appears. Instead, respondent points to the concluding language of Vehicle Code section 16020, subdivision (a), which appears after the requirement of ability to provide financial responsibility. The statute then provides that every driver and owner of a motor vehicle shall carry in the vehicle evidence, as defined, of the form of financial responsibility in effect for it. Respondent contends that there was no indication that plaintiff ever complied with this requirement, by "writing the name of the insurance company or surety company and the policy number on the vehicle registration card issued by the department." (Veh. Code, § 16020, subd. (c).)

But that is not what this case is about. Vehicle Code section 16020 imposes two separate requirements, and the one at issue here is that of establishing financial responsibility, not of carrying proof of it. Section 3333.4, subdivision (a)(2) bars recovery of noneconomic damages by an owner of a vehicle that "was not insured as required by the financial responsibility laws of this state," not an owner who has failed to carry evidence of financial responsibility in the vehicle. Even assuming plaintiff did not meet the evidence requirement, under Vehicle Code section 16021, subdivision (b) he did meet the requirement of financial responsibility with respect to his vehicle.[4]

Respondent also cites Vehicle Code sections 17150 and 17151, which provide for liability of motor vehicle owners for personal injury or property damage occasioned by use of the vehicle with the owner's permission. Respondent argues, "The public interest requires that an owner have sufficient funds to pay such recovery." Be that as it may, sections 17150-17151 are not part of the Financial Responsibility Laws, nor is insurance of their statutory liability specifically required to establish financial responsibility or, consequently, to render a vehicle insured under section 3333.4, subdivision (a)(2).

Respondent finally cites our decision in *Dowell* v. *Department of Motor Vehicles* (1990) 220 Cal.App.3d 1567, 1569 [270 Cal.Rptr. 240], which quoted the legislation that enacted the modern Financial Responsibility Laws, to the effect that it is the policy of this state that vehicle owners and operators be financially capable of recompensing those injured, " 'and further, that such capability shall be deemed *a concurrent responsibility of such motor vehicle ownership or operation.*' (Stats. 1974, ch. 1409, § 1, italics added.)" Respondent appears to imply that the italicized portion of the

---

[4]The same holds true with respect to Vehicle Code section 4000.37, cited by respondent at oral argument, which requires that evidence of financial responsibility be submitted when renewing a vehicle's registration. Moreover, that section is not part of the Financial Responsibility Laws.

quoted legislation referred to a concurrent responsibility of the owner and the driver of a vehicle to carry insurance. We cannot agree. The plain import of the quoted language is that financial responsibility is a responsibility concurrent with vehicle ownership or operation.

Our holding, moreover, follows the will of the Legislature, as it has been expressed and enacted. The Financial Responsibility Laws that implement the Legislature's purpose provide specifically that "Every driver and every owner of a motor vehicle shall at all times be able to establish financial responsibility pursuant to Section 16021 . . . ." (Veh. Code, § 16020, subd. (a).) And under subdivision (b) of section 16021, financial responsibility of plaintiff and his late wife was established by the insurance carried by the driver of their vehicle.

The insurance requirements of the Financial Responsibility Laws having been satisfied, the vehicle was "insured as required by the financial responsibility laws of this state." (§ 3333.4, subd. (a)(2).) It follows that the judgment must be reversed insofar as it denied plaintiff any nonpecuniary damages, by virtue of the trial court's *in limine* ruling under section 3333.4. In light of this conclusion, we express no opinion concerning the constitutional arguments by plaintiff and amici curiae, that section 3333.4 as applied to plaintiff denies him equal protection of the laws, and that its retroactive application to this case denies due process.

### DISPOSITION

The judgment is reversed insofar as it denies recovery of nonpecuniary damages, and is otherwise affirmed. Plaintiff shall recover costs.

Boren, P. J., and Zebrowski, J., concurred.

On November 18, 1998, the opinion was modified to read as printed above. Respondents' petition for review by the Supreme Court was denied January 27, 1999.